Good morning, Sarah Stetler on behalf of Petitioner and Appellant Byrne Kills On Top. May it please the Court. Before discussing the issues brought up on appeal, I thought it would be helpful to provide a small bit of context to the issues. Byrne Kills On Top and his brother Lester Kills On Top were charged in Montana of murder, aggravated kidnapping, and robbery of a white man, John Martin Etchemendy. The atmosphere around the trial was inflamed by all the natural passions which occur when a well-known victim is murdered, but they were exacerbated by the tensions, the racial tensions, between Native Americans and whites in this area of Montana, which is actually the area where Custer made his last stand. The victim, as I said, came from a well-known family in Custer County. Leading up to trial, there were rumors of lynch mobs. There were also rumors that if the jury did not return a death sentence, that the Etchemendy family might take extra-legal action into their own hands if they were displeased with the verdict. The media coverage surrounding the trial was extensive, as it usually is in a case of this nature, but its effect on our client, Byrne Kills On Top, was especially prejudicial because following Lester Kills On Top's murder trial, his went first, the Billings paper announced with big headline, Killer Gets Death Sentence, had a picture of our client, Byrne Kills On Top, as the killer beneath the photo, beneath the headline. It was a mistake, but it was something that we think prejudiced our client. The case was largely based upon Diane Bull Cummings' testimony. She worked out a plea agreement with the state in which she gave testimony in both the cases against Lester and Byrne, and they both ended up with death sentences, while she got a very lenient sentence, and, in fact, has been, since been released, and has been in other trouble since then. There's a significant amount of Brady information, which turned up in post-conviction proceedings, which was never given to either Lester or Byrne, and was, therefore, not used at trial. So I think these are the, that's the context that we need to have before we look at the issues here. The first issue is the badge issue, and I think the atmosphere surrounding Byrne Kills On Top's trial is particularly relevant, given what happened here. The, at the close of the state's case, Byrne Kills On Top's trial counsel, John Forsythe, was told that the bailiff and the courtroom deputy had been wearing, in plain view, a take-a-bite-out-of-crime. He had not seen it. What's that? He had not observed it. He said that he had not seen it. He said that, actually, he was informed by, I think, his investigator, as well as the prosecuting attorney. And so his testimony at the motion for mistrial, which he made a motion for mistrial following, you know, his receiving this information. And he said that he was told that they'd been wearing it throughout the state's case, which was fairly short in time, and that the jury was obviously exposed to it because the bailiff not only took them back and forth to the jury room, but in the presentation of exhibits and evidence, it was clearly visible. However, unfortunately, there was never any post-conviction proceedings on this matter, as was the case in Norris, when this court ordered that. When was the issue raised with the Montana court? Well, it was raised as a motion for mistrial, which was denied. Although, at the time of the motion... But I mean on appeal. On appeal, it was raised on direct appeal. John Forsythe, the trial counsel, continued to represent Mr. Kilzontop, Vern Kilzontop, to the Montana Supreme Court. And on direct appeal, he raised it as trial court error in failing to grant the motion for mistrial, even though it's really more of a extra-record claim or a habeas claim, which, you know, would involve further factual development. But that's when it was first raised to the Montana Supreme Court. They denied the claim. It was again raised on... And they ruled that there was no prejudice. No prejudice has been shown. They didn't really deal with it in that sense. They dealt with it as a whether the trial court had abused its discretion... But isn't there a specific ruling by the Montana Supreme Court, you've not shown any prejudice? The specific ruling in the direct appeal was that there was no abuse of discretion in denying the motion for mistrial. Are you denying what I'm saying? Do you think they didn't say that? My recollection is that there was just a finding that there was no abuse of discretion in the motion for mistrial. I think you're incorrect. I think the Montana Supreme Court said there was no prejudice. I take your word for it. My understanding of that ruling was that there was not a sufficient showing of an abuse of discretion. Well, the reason that was insufficient was there was no prejudice shown to the defendant. So there's a ruling on this claim. I grant you that, but our position is that it's not really a claim that should have been brought on direct appeal in terms of the factual development that should have occurred to show whether or not the jurors were aware of these buttons, how many jurors were exposed to it, whether... Because only then can we really gauge the amount of prejudice that occurred. But it was brought up on direct appeal and was ruled upon. But that's what I'm saying. It should not have been brought up on... So what are we going to do about that? Well, I think the problem was what was before the Montana Supreme Court on direct appeal was just what we have in the excerpts of record, which is the trial counsel's very short statement in support of the motion for mistrial, which was just that... Well, I mean, you could make a claim of ineffective assistance to counsel, but you're not making that, as I understand. No, no. We're... I mean, there were other ineffective assistance of counsel allegations, but those are not before the court at this time. So, I mean, you accept what the counsel did in that. He raised it. He didn't do it very well. They ruled on it. But, again, I think their ruling is incorrect, given the line of Supreme Court cases that this court interpreted in Norris v. Risely and Mosley v. Lamarck. So if we take it on the facts that were in the record on direct appeal, their finding of no prejudice conflicts with and is an unreasonable application of the line of cases starting with Turner and going through Estelle v. Williams and Holbrook v. McClain. What Supreme Court case was violated? What's that? What decision of the United States Supreme Court was violated? Well, I think that whole line of cases... So what one? Well, Estelle v. Williams, in which the Supreme Court said that the compelled wearing of prison garb is... the compelled wearing of prison garb injects an unreasonable inference. That seems very far afield from a badge on a bailiff. I think more to the point is Parker v. Gladden, which was a case in which a bailiff actually communicated with at least a couple of jurors and... What did they say? He essentially told them that the defendant is guilty, and even if you find him guilty and there's some... And you think that that was violated by the bailiff wearing a badge of this character? Yes, because I think the badge in this case, unlike the badge in Norris v. Risley and Musladin v. Lamarck, it was, A, worn by state actors versus spectators. And so there's a different... The First Amendment doesn't come into play here. It's a state action, and it's a badge which commands that they do something. It's not a position like the women against rape or the photo of the victim in Musladin. It actually commands them to take a bite out of crime. It may not be as easily... It's not as easy to show the prejudice in... I mean, it's clear in Parker v. Gladden, the court issued a per curiam opinion. No one had any dispute that talking to the juror and telling them that the defendant was guilty was wrong. That violated fair trial, due process, presumption of innocence. Look at how this is presented to the Montana Supreme Court. There's no showing of how long those badges were worn. They were not observed by defense counsel on his own. And the Montana court, looking at this very slight evidence, says there was no prejudice. What decision of the United States Supreme Court has been violated? Well, our position is that the... Again, on direct appeal, there was just a ruling upon whether there was an abuse of discretion on... Well, I think you're wrong on that. But I think there was not enough factual evidence in the record for the... Well, that's because of the way counsel presented it. Exactly. And then it was raised on post-conviction, and then the Montana Supreme Court made a decision that was wrong in deciding that it had already been raised and rejected the res judicata rule in the direct appeal, which was not the case. When it was raised after the denial at post-conviction, it was raised as a federalized claim, not just an abuse of discretion under state law for failing to grant the motion for mistrial. It was raised as a violation of all this line of Supreme Court cases, as interpreted by this court in Norris. And at that point, counsel had moved for a hearing in the state trial court. That was not granted, so it went up to the Montana Supreme Court a second time with similar evidence, but because they were not allowed to develop the record any further. Can I interrupt before your time runs? Sure. I've got a prior question, and that is, how can we reach that issue? That is, has it been exhausted? Is there a procedural bar? The magistrate judge declined to reach the issue. Why is the magistrate judge wrong? Well, I think the magistrate judge is wrong because it found that the res judicata bar that was raised by the state and accepted by the Montana Supreme Court in the appeal from the first post-conviction, the magistrate judge determined that that was an adequate and independent procedural bar. And that flies in the face of Bills v. Nonemaker, a U.S. Supreme Court case, which found that the re-litigation rules, which are sometimes called res judicata, are not a procedural ruling or a procedural bar. It's not adequate to preclude a federal court reaching the merits. And the magistrate judge was mistaken in accepting that as an adequate and independent procedural bar. But what do we do with the problem that, as you yourself have described it, in direct appeal, the only issue raised to the Montana Supreme Court was a question of state law? And you're, of course, arguing a question of federal law. The question of federal law is presented in Nevada collateral review, but there's a Montana rule forbidding it to be raised later if it could have been raised earlier. I mean, we've got a complex problem here. Procedural bar, maybe res judicata takes care of it, but this is a complex little deal here. I agree with the Court. It is complex because there's the res judicata rule, which is said to prevent the re-litigation of claims which have already been raised. That didn't really apply here because the federalized claim was different from what was raised on direct appeal. Or maybe it did apply, and maybe the Montana Supreme Court, the second time around, when it says res judicata construes its first ruling as having ruled on the federal claim. That is to say, having construed the first claim as including not only state but also federal. Otherwise, as I understand Montana res judicata law in this setting, they don't have a use it or lose it. It actually was litigated. And for them to hold the second time around res judicata on the federal claim, they necessarily had to mean that the federal claim had been decided the first time around. I don't agree with that assessment. You should. Respectfully, I think the rule against raising something which prevents you from raising something that should have been raised on direct appeal doesn't affect this claim because this is really an habeas or post-conviction claim. It's something that requires extra record back development, as was the case in Norris v. Risely. I mean, the problem that we all have is looking at what was the presentation that was made by trial counsel in his brief argument for his motion. No, I understand that. But I was suggesting that the Montana Supreme Court did indeed decide the federal claim or tells us that it did, and therefore we can now decide it. I'm still worried about the bar problem. Okay. Well, I think that problem is taken care of because if you look at the first opinion, the Montana Supreme Court opinion following the first opinion following the first post-conviction proceedings in which they find the badge claim to be barred by res judicata, later in the opinion they deal with the rule that you spoke of, which is precluding claims that could have been raised on direct appeal but were not. They barred other claims under that rule, but specifically did not bar the badge claim under that rule. They barred it under the res judicata rule, which, as we said, was an incorrect application of it because that was not the claim that was brought on direct appeal. When you say incorrect, you mean incorrect as a matter of Montana law? Yes. The Supreme Court, we're not in a position to make that determination. No, I think that it was just a factual or a legally incorrect application of not just the Montana state rule but the federal rules, as I said, Gilfie Nunnemaker being one, and I think Pertle v. Morgan is another from this court. There was just an unreasonable application of those cases. What are we to make of, you're probably aware that the Supreme Court has made a certain Muslim case. Yes. What are we to do with that, if anything, at this point? Well, at this point, I don't think the court needs to be concerned with that. I don't have the tea leaves to know what the Supreme Court is going to do with it, but I have reviewed the briefing in that case on which the court granted cert as well as the denial of rehearing on bond dissents from this court. I think the judges on this court that dissented from that denial were concerned with the badge and what the badge really meant. That was part of it. Part of this was the factual problem of whether a picture was the same as a statement. Again, that's not a problem that we have here. The other problem they had was whether they interpreted the panel in the Musaladin case as elevating Ninth Circuit authority to the same level as U.S. Supreme Court authority. And my read on that is that it was a — I think that's incorrect. I think that what this court was doing in that case, like other circuits, I think the First, Third, and Eighth, at the very least, do the very same thing, which is when determining what the Supreme Court law is on an issue, they look to their own circuit president to see how other cases with the same facts have come up and what law has been used in it. Assuming we can get past the procedural bar exhaustion complex of problems and we think that, in fact, this badge question, as a matter of federal law, was properly before the magistrate judge, what should we do? Remand to the magistrate judge for a hearing as to what the actual facts were? At this point, we don't have much of a record. All we have is that little bit that we know from the trial itself. Sure. So what you basically want is a hearing, and then we see where we go from there. I mean, that's what this court did in Norris. It was remanded to the state court for a hearing, and certainly factual development would be welcome in this case. The problem, of course, is that near two decades have passed, so the difficulty in recreating it is something that we would have to deal with. I think that under Musladeen, it's not necessary to go back for a hearing. It could be a core concern. So if we don't go back on a hearing, your evidence is awfully slight. I agree. And factual development is what should have been done at the first motion. As I read Norris and Musladeen, it's almost a structural error analysis. This is under federal law. Assuming that the buttons were worn and seen, it doesn't sound as though under federal law, as we see it. Now, the Supreme Court may see it differently, but under federal law, as we see it, prejudice is presumed. Well, the Supreme Court may see it differently, but their line of cases, which were relied upon for Norris and Musladeen, said that there are some errors which are inherently prejudicial. So the fact that the button was worn, that has been established in the record. There is no dispute about that. That is enough to – You know, we've taken you over. Why don't we hear from the State of Montana, and then we'll give you a short time for rebuttal. Good morning, Your Honors. May it please the Court. My name is Mark Fowler. I'm Assistant Attorney General for the State of Montana. I'm here representing the State. To address Your Honors' first question, the Court indeed stated, that is the Montana Supreme Court did state in its direct appeal decision, that the defendant had made no showing of prejudice and had demonstrated no basis for mistrial. I hasten to add as well that in the defendant's brief on direct appeal, there is no mention of any law, period. There's no citation of law. There's only one sentence, if it can be said were a legal argument. This open display – with the Court's indulgence, I'm going to read directly from the record. It's from Supplemental Excerpts of Record, page number three. This open display of partiality during the defense of the case communicated a message to the jury. This conduct should not be tolerated, and the case should be reversed on this basis. It's fundamental to habeas law that a habeas petitioner must first present a claim under state court rules for presenting a claim to the state court with sufficient information that would alert the state court to the operative facts and the legal theory. I don't know what legal theory is presented here under our state or federal law, but if there's any theory, open display of partiality is not coming anywhere close to the clearly established anti-state court precedent that my post and counsel mentioned correctly were Estella v. Williams from 1976 and Holbrook v. Flynn from 1986, the latter case dealing with four state troopers at a trial that stood behind or sat behind the defense counsel. Well, but I think you're mixing two things. One of them is that Montana Supreme Court sufficiently alerted us to the nature of the claim, but now you're talking about, well, is the claim any good? Yes, Your Honor. Yes, I had gone far afield. What I meant to say is that the state court was never properly alerted to what the federal law was saying. Well, it wasn't. I think I'm probably in agreement with you that the Montana Supreme Court on direct appeal was not alerted to the federal nature of the claim. On collateral attack in the Montana courts, the federal nature of the claim was made clear. Why was that not sufficient then to raise it for purposes of exhaustion? Because a habeas petitioner must bring the claim, the claim that he seeks to have the federal court entertain at the first available opportunity. The first available opportunity this defendant did was direct appeal. But there are two possible answers to that, and I'd like your response to the two possible answers. The first possible answer is that the Montana rule that you've just described may be thought to have been applied inconsistently, as to say for a proper procedural bar, we hold that the state court must consistently apply the rule that bars it. The second possible answer is, well, whether or not they have a rule that would bar it because they didn't bring it up the first time around. The second possible answer is the Montana court the second time around on Montana habeas says, well, the federal claim is barred because of res judicata. Now, I don't think there's any question but what Montana res judicata law in the context of habeas requires that for it to be barred by res judicata, it must previously have been litigated. Not res judicata in the sense of you could have litigated it, but you did not. Well, if the Montana court the second time around is right that it's barred by res judicata, that necessarily means, in fact, the Montana court the first time around decided not only the state but also the federal claim. Do you understand my two arguments? I believe I do, Your Honor. And if you could respond to both of them, I would appreciate it. I do think they're consistent. First, let's clarify. The bar that the Montana Supreme Court applied in the first post-conviction appeal was res judicata, the matter had been litigated. Nothing else but that. That says then, if that's right, that necessarily says that the federal claim of the buttons was litigated. It does not communicate that. Why not? Because the matter that was decided was, if anything, a state law claim. That's the matter we talked about. Oh, but if that's so, then it can't have been res judicata under Montana law. It doesn't say that the court the second time around made a mistake of Montana law in saying that it was res judicata. Your Honor, whether the Montana Supreme Court erred in applying some procedure law, it's not within the purview of this Court. So, in other words, you're saying that the second time around, the Montana court was wrong in saying that it was res judicata? No, Your Honor. Well, you better say it's right or wrong. Because if it's right, then they decided before. If it's wrong, then you can say, but it's not our business to say whether they made a mistake. No. The Montana Supreme Court applying res judicata may find that it decided a case among the elements of res judicata is whether or not the same operative facts were decided. The same operative facts here were presented to the Montana Supreme Court. There was additional fact, actually, to be fair. There was a allegation by the petitioner without any support, just his own conclusory allegation post-conviction that there were spectators also wearing badges. That was the one addition. However, the same operative facts, wearing badges, was the matter already decided. It's one of the elements of res judicata. But the matter includes not only what the facts were, but what the legal claims were, correct? Right. And the Court necessarily in res judicata says, if I understand Montana law correctly, when they say res judicata, that means that the claim you are now seeking to present, which is a federal claim, has already been decided. That means they had to have decided that the first time around on direct appeal, they decided the federal claim. And you can say, well, they made a mistake. That really is, they misapplied Montana law. Or you can say they properly decided Montana law, which means that the first time around on direct appeal, the Montana Court did decide the federal claim. I mean, those are your choices. No. I think there's a third rationality. Okay. I beg to differ. The third rationality is that another component of res judicata is an exception to this application based on the ends of justice. The Court implicitly found the ends of justice did not merit a relook at this issue. So how does the Court decide? But that's an exception to res judicata rather than res judicata. But it was another means by which this Court could have looked at the federal — the federalized claim if it wanted to. So, I mean, there's a lot of guessing here because we don't have exactly the full rationale of why it applied its own State procedural law. But the State wants to emphasize that it applied its own State — its own procedural law in deciding not to because no one's fault but the Petitioner in choosing to couch his claim, no matter what you did, on direct appeal. However, to even still address your — your bifold inquiry or the choice between two avenues, I would say as an alternative argument, my opposing counsel disagrees and says I have — the State has waived this claim, but I don't believe it has. The magistrate had decided that as an alternative theory, actually correcting in the second order that it stated as first. In the second order, it — it clarified that under alternative theory, the first claim, if it's conceived as a federal claim, is unexhausted because it was not properly presented. It's unexhausted and futile to — for a Petitioner to go back to State court to pursue it because the time has lapsed for pursuing State court remedies. Therefore, it's procedurally defaulted on this separate issue. That — that appears in this record, in the excerpts of record page 347, page 7 on footnote number 7. Now, the State has emphasized that in its appellate brief and — and replied to say I've waived it because the State had not raised it below. That's correct. But the magistrate did. And this Court can affirm that basis as an alternative rationale for the same result. It's defaulted. This Court cannot reach that issue. Your — Your Honors, I have a significant amount of time. I'd gladly give it to my opposing counsel if there isn't any questions. I'll sit down at this time. Well, let me ask you this. Assuming — and this is only an assumption — assuming we hold that the magistrate judge made a mistake in finding that the badge claim under Federal law could not be presented on Federal habeas, that's to say, assuming we think that that back — that Federal claim was properly before him, what should we do? Your Honor, I must probably side with the recommendation of my opposing counsel based on the Norris case that you — you do require to — to reach this issue in evidentiary development. The Musildin case shows that, and the Norris case especially shows that. I take issue with these characterizations by my — my opposing counsel in the brief that there is a per se prejudice issue here. It's not per se. Reading the Norris case, as I have five times, looking for the words presumption, per se, they don't appear. They require all the circumstances to be developed surrounding the — the inherent prejudice. And Musildin also would like to emphasize, in your Musildin decision, you clarified that active — actual prejudice still must be shown, or in the alternative, inherent prejudice. Both of these require some evidentiary support. As Your Honor has noted, there is scant little evidentiary support for the — all the circumstances surrounding the wearing of these badges. I have a sneaking suspicion we're going to learn something when the Supreme Court decides Musildin. What would — I'm not asking you to concede that the question was properly in front of the magistrate judge, but assuming for the purposes of my question that the question was before — properly before the magistrate judge, should — can we remand to the magistrate judge to apply the law that we're quite confident that will be announced? That's to say, not apply the law as we tell them it now is, but apply whatever the law turns out to be when we combine Norris, Musildin, and whatever the Supreme Court does in Musildin. Your Honor, to — to properly follow your hypothesis, I must also underscore that there is not evidentiary development. If — if you claim — if you are asserting that the first opportunity to raise this issue was raised as a Federal law claim in the direct appeal, even so, the fact that there's not evidentiary support has to be answered by the petitioner. The petitioner has that burden to show the Federal court why there's not evidentiary development. Why didn't you raise — why didn't you bring forth sufficient facts? Why didn't you, at the time of mistrial, proffer certain evidence or proffer or — or offer the court to show for the record what could additionally be shown? You know, there's a whole host of other reasons why there wasn't factual development. It's not — it's not — that — that fault doesn't — doesn't come upon the State — Montana State Supreme Court, the fact that it didn't have sufficient facts before it. So, again, it goes back to the reason and the manner in which it was raised. With respect to what kind of showing needs to be made, don't you think a strong argument could be made that at least what's asserted with respect to the wearing of badges here was likely to be more prejudicial than the — than the showing made in Norris? More prejudicial, Your Honor? More prejudicial in the sense that these were — were government — government officials that were wearing the badges. If I may depart from the — from the record for just a moment, I believe that Take Goodbye to Crime was a — was an effort, national — national-wide effort, as you recall, involving a cartoonish detective bloodhound in — in overcoat. I think it was about detection of — of crime. I — I, you know, I don't think that Take Goodbye to Crime, it was commonly known back then, necessarily communicates directly, openly, with purpose, intent, as were the factors in the Norris and the Muslin cases, that you, jury, need to convict this defendant. So when you look at this — Unless the judge had worn such a badge, would that have — I'm sorry? Would that have been appropriate for the judge to wear such a badge? Different — different circumstances. Those — those go within the mix and within the calculus that — that Norris demands and the other — the other cases, the Williams case demands, looking at a number of factors, looking at what is the defendant being charged with? What is the — the nature — the nature of — of the duties and roles of the people wearing the badge? What were the remedies being used? It was a very simple remedy that the Norris — this court in Norris said, you know, take the badges off. The badges were taken off here. We don't know how long they were actually used entirely before the — before the jury. Do we know if the participants are alive? I mean, this was a long time ago. For example, do we know if the bailiff is still alive? We don't know that, Your Honor. I mean, if the bailiff is still alive, maybe he could testify and tell us. But the short answer is, at the moment, we don't know. Yeah. We don't know. And, again, to emphasize again for the pain of being redundant is that, you know, the Petitioner, even in his first post-conviction appeal, making a conclusory claim that he believes he saw a couple of spectators wear that. Well, where were the affidavits in support to identify who these spectators were? I mean, there is not — there can't — there has to be, first, a sufficient explanation why it was more — wasn't more evidentiary development at that time. Any more questions, Your Honor? Sorry. Thank you very much. Thank you. Rebuttal? Just quickly, and then I'll take whatever questions you might have. To address Respondent's allegation that it was the fault of Petitioner for not developing the record, as I said, on direct appeal, this was not a claim that could be raised except on the record, and the record was very slight on this issue. It was more properly — What about the argument that I think I also heard, not only failure to develop the record on appeal, but I think I really heard the argument, failure to develop the record right then in the trial court? Well, and that would go to ineffective assistance of counsel. I mean — But that claim is not in front of us. No, I agree. But the problem, I think, is that, you know, it's possible that counsel could have tried to develop the record more, but he made his objection — he made the record that he could, and it was summarily denied. So maybe your argument is, under the circumstances, it would have been a very odd thing for him to have tried to ask the trial judge in the middle of a capital murder trial, can we have a little side trial about how many people wore the button, who saw them, and so on? I believe so. I mean, I think the court looked at it, even though the trial court was not even worried about them removing them. The prosecutor conceded that it was a problem and that they should remove them, and at that point they did. But the trial court was not concerned. I'm not sure the prosecutor conceded it was a problem. I think the prosecutor said, it doesn't matter much, but we'll take them off. Well, that's true. I think he said, it doesn't matter, maybe. So there was some hedging. But, again, getting back to the development of facts on post-conviction, Petitioner tried. He requested a hearing on the claim. It was not granted. I mean, the Supreme Court has said, you know, failure to develop the facts. Does what little we have in the case of a record tell us when the badge wearing began? No. It was many days into the trial. Unfortunately, we don't know that. We know that the motion for mistrial was made at the end of the state's case. And I believe what is on the actual transcript is just that the trial counsel had just learned that they had been wearing them. But there is the implication that it had been over at least a period of days. Over a period of days? I believe that was the implication. So it hadn't been just that very day they had worn them and he had gotten notice, but that it had been throughout the state's case. What gives us that basis for it? I'd have to look back at the transcript and the post-conviction petition, but I believe that there was some language to the effect that it was not just this very moment they put them on. It was over a period of time. And I would just like to also address Judge Pollack's, I think, hit the nail on the head when he asked opposing counsel whether it would be proper for a judge to wear these same badges. And I think that is what separates this case from Museldin and Norris. The whole line of Supreme Court cases relied upon by Norris and then Museldin involved state action, state troopers behind the defendant's table, the wearing of, you know, the court compelling, the wearing of prison garb, the, in Parker v. Gladden, the bailiff discussing with the jurors. In Turner v. Louisiana, the sheriffs who were helping the sequestered jurors, all of that is state action. And here we have state actors, not spectators, and there is a clear message. Okay. Thank you, Your Honor. Thank you very much. Thank both sides for a useful argument in a tricky case. The case of Hills on Top v. Mahoney is now submitted for decision. We are now in adjournment until tomorrow morning.
judges: Noonan, W. Fletcher, Pollak